UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00184-GNS

JASON W. DURBIN                                                          PLAINTIFF

v.

AMERICREDIT FINANCIAL SERVICES, INC.;
CAPITAL ONE AUTO FINANCE, INC.;
EXETER FINANCE, LLC; and
GLOBAL LENDING SERVICES, LLC                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss (DNs 27, 28, 29, 33,
36, 44, 45, 46), Plaintiff's Motion to Amend the Complaint (DN 42), and Defendant's Proposed
Agreed Orders to Extend Time to Respond (DNs 59, 60).  These matters are now ripe for
adjudication.  For the reasons that follow, Defendants' first five motions to dismiss (DNs 27, 28,
29, 33, 36) are **DENIED AS MOOT**; Plaintiff's motion to amend (DN 42) is **GRANTED**;
Defendants' final three motions to dismiss (DNs 44, 45, 46) are **DENIED IN PART** and
**GRANTED IN PART**; and Defendant's proposed agreed orders to extend time to respond (DNs
59, 60) are **GRANTED**.

## I.      BACKGROUND

### A.      Statement of Facts

On August 12, 2019, Plaintiff Jason W. Durbin ("Durbin") and his wife purchased a 2015
Ford Escape from Defendant Byerly Ford-Nissan, Inc. ("Byerly"), which was financed with a
Retail Installment Contract and Security Agreement ("RICS").  (Am. Compl. ¶ 11, DN 42-1).  The
terms of the RICS provided for 54 monthly payments of $439.52 and assignment without recourse
by Byerly to Transcend Credit Union ("Transcend").  (Am. Compl. Ex. A, at 2-3, DN 42-2).  In

1

September 2019, Durbin learned that each of the seven named defendants—Byerly; AmeriCredit Financial Services, Inc. ("AmeriCredit"); Prestige Financial Services, Inc. ("Prestige"); Exeter Finance, LLC ("Exeter"); Capital One Auto Finance, Inc. ("Capital One"); Global Lending Services, LLC ("Global Lending"); and Consumer Portfolio Services, Inc. ("Consumer") (collectively, the "Defendants")—had at different times made "hard-credit inquiries"[1] for his credit report with each of the three consumer reporting agencies—Equifax Information Services, LLC; Trans Union, LLC; and Experian Information Solutions, Inc.—even though Durbin had not entered into a credit transaction with any of Defendants. (Am. Compl. ¶¶ 19-30, 36-39).

Durbin promptly contacted Byerly to ascertain the reason for these credit inquiries, and he was informed that Transcend rejected the RICS, which in turn had required Byerly to find new financing. (Am. Compl. ¶¶ 25-26). As such, when the first payment was due under the terms of the RICS, Durbin was unsure which entity to pay. (Am. Compl. ¶¶ 32). Eventually, Durbin returned the Ford Escape to Byerly. (Am. Compl. ¶ 35). Durbin clarifies that he never gave permission for Defendants to access his credit report, the aforementioned hard inquires remain on his report, and his credit score has been lowered as a result. (Am. Comp. ¶¶ 40, 56).

### B.   <u>Procedural History</u>

On December 13, 2019, Durbin initiated this action against Defendants asserting claims under state law and the Fair Credit Reporting Act ("FCRA"). (Compl., DN 1).[2] In the months that followed, Defendants filed a series of motions to dismiss, to which Durbin responded. (Defs.'

---

[1] As explained in the First Amended Complaint via a citation to the Credit Karma website, a "hard inquiry" as opposed to a "soft inquiry" must generally be authorized by the subject of the inquiry, will remain on the subject's credit report for two years, and will lower his or her credit score in the meantime. (Am. Compl. ¶ 43).

[2] Three of the named Defendants—Byerly, Consumer, and Prestige—have settled and been dismissed from this action. (Orders, DNs 51, 52, 62).

Mots. Dismiss, DNs 27, 28, 29, 33, 36; Pl.'s Resps. Defs.' Mots. Dismiss, DNs 37, 38, 39, 40, 41). On February 18, 2020, Durbin moved to amend the Complaint and attached the proposed First Amended Complaint. (Pl.'s Mot. Amend Compl., DN 42). Because the motion was filed within the timeframe permitted for amendment as a matter of course under Fed. R. Civ. P. 15(a)(1)(B), the motion is granted, and the First Amended Complaint is thereby the operative complaint.[3] The remaining Defendants then re-filed their motions to dismiss. (Defs.' Mots. Dismiss, DNs 44, 45, 46). Durbin responded, and Defendants replied. (Pl.'s Resps. Defs.' Mots. Dismiss, DNs 53, 54, 55; Defs.' Replies Mots. Dismiss, DNs 56, 57, 58). Finally, Global Lending submitted proposed agreed orders for an extension of time to respond to the First Amended Complaint. (Def.'s Mots. Extension, DNs 59, 60).[4]

## II.   JURISDICTION

The Court has subject matter jurisdiction over this action as a federal question because the First Amended Complaint alleges violations of the FCRA. *See* 28 U.S.C. § 1331. The Court has

---

[3] The filing of the First Amended Complaint rendered moot the many motions to dismiss the Complaint. *See Clark v. Johnston*, 413 F. App'x 804, 811 (6th Cir. 2011) ("When a pleading is amended pursuant to Federal Rule of Civil Procedure 15(a), the amended pleading supersedes the original pleading, i.e., 'the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading.'" (citations omitted)). The parties clearly recognized this fact, which is why Defendants re-filed their motions to dismiss after Durbin moved to amend. The first four motions to dismiss (DNs 27, 28, 29, 33) are thereby denied as moot. As for Prestige Financial Service's motion to dismiss (DN 36), it was rendered moot by the parties' settlement and this Court's subsequent order dismissing the claims against Prestige with prejudice. (Notice Settlement, DN 43; Order, DN 62).

[4] Global Lending previously made this same motion, which this Court granted. (Def.'s Mot. Extension, DN 47; Order, DN 48). The second proposed order, DN 59, requested an extension to May 4, 2020, and the third proposed order, DN 60, requested an extension to June 3, 2020. These motions are granted pursuant to LR 7.1(b). Given that the proposed extension dates have now passed and the motion to amend is now granted, Global Lending has 14 days from the entry of this Order to move, plead, or otherwise respond to the First Amended Complaint. *See* Fed. R. Civ. P. 15(a)(3).

supplemental jurisdiction over the remaining state law claims because they arise from the same case and controversy as the federal claim. *See* 28 U.S.C. § 1367(a).

### III.   STANDARD OF REVIEW

In order to survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).   Even so, the Court need not accept a party's "bare assertion of legal conclusions." *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citation omitted).   Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### IV.   DISCUSSION

Three of the remaining Defendants—Exeter, AmeriCredit, and Capital One—have moved to dismiss Durbin's claims pursuant to Fed. R. Civ. P. 12(b)(6).   (Defs.' Mots. Dismiss, DN 44, 45, 46).   These motions contend that, first, Durbin has not shown they accessed his credit without a "permissible purpose," and, second, that his defamation claims are preempted by the FCRA. (Defs.' Mems. Supp. Mots. Dismiss 2, DNs 44-1, 45-1, 46-1).[5]

---

[5] The moving Defendants are all represented by the same counsel and present identical arguments and case citations in their motions to dismiss.   As such, the Court will address these motions collectively.

A.    **Fair Credit Reporting Act**

The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*, was enacted by Congress in 1970 to "promote efficiency in the Nation's banking system and to protect consumer privacy." *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001) (citing 15 U.S.C. § 1681(a)).   The FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living . . . ."   15 U.S.C. § 1681a(d)(1).  The FCRA further provides the permissible purposes for a user to access a consumer report (15 U.S.C. § 1681b), and it creates a private right of action for consumers to recover for both willful (15 U.S.C. § 1681n) and negligent (15 U.S.C. § 1681o) violations of the Act.   A plaintiff bringing a claim for an improper use of a credit report must show the requisite culpability and three additional elements:   "(i) that there was a 'consumer report' within the meaning of the statute; (ii) that the defendant used or obtained it; and (iii) that the defendant did so without a permissible statutory purpose."  *Bickley v. Dish Network, LLC*, 751 F.3d 724, 728 (6th Cir. 2014) (citations omitted).

Defendants do not appear to contest the first two elements—there was a consumer report, and Defendants accessed it.  The question then is whether Defendants had a "permissible statutory purpose" to access the report.  Generally speaking, a lender can access a consumer report of a potential borrower if it will be used "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer . . . ."  15 U.S.C § 1681b(a)(3)(A).  Defendants next concede, for now at least, that the hard inquires in question had no "permissible statutory purpose" because Durbin never applied to any of them for credit.  The crux of Defendants' argument, then,

is that they *reasonably believed* that Durbin was seeking an extension of credit, and they therefore did not willfully or negligently violate the FCRA—i.e., they did not have the requisite culpability. (Defs.' Mems. Supp. Mots. Dismiss 9).

Durbin's responses to these motions first collectively contend that Defendants' motions to dismiss are based on their affirmative defenses, and that the First Amended Complaint should not be dismissed based upon an affirmative defense.  (Pl.'s Resps. Defs.' Mots. Dismiss 8-13, DNs 53, 54, 55).[6]  In support of this argument, Durbin quotes extensively to *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480 (9th Cir. 2019).  In *Nayab*, the Ninth Circuit considered a plaintiff's claim that her credit report was obtained by a defendant for a purpose not authorized by the FCRA. *Id*. at 490.  The court considered at length who should have the burden of pleading whether or not the report was accessed for an authorized purpose.  *Id*. at 493-96.  The Ninth Circuit ultimately concluded that "Capital One, as the defendant, has the burden of pleading it had an authorized purpose to acquire Nayab's credit report."  *Id*. at 495.  In other words, rather than the plaintiff proving there was no statutory purpose, the defendant has the burden to explain its purpose for accessing plaintiff's credit.

Other courts have recognized that "in order to survive a motion to dismiss, the plaintiff's complaint must allege specific facts as to the defendant's mental state when the defendant accessed the plaintiff's credit report."  *See Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 167 (S.D.N.Y. 2014) (gathering case law).  Regardless, even accepting that the user's authorized purpose is an affirmative defense, courts may still consider affirmative defenses at the pleadings stage.  *See Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)

---

[6] As with the motions to dismiss, Durbin's responses are nearly identical and will be considered as one.

("[A] motion for dismissal pursuant to Rule 12(b)(6) will be granted if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense."); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) ("But there is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law." (citation omitted)).

As such, the question remaining is whether Defendants have established that they accessed Durbin's credit report with the requisite mental state as a matter of law. If Defendants accessed the report without a permissible purpose and did so either negligently or willfully, then they may be liable under the FCRA. *See Miller v. Wells Fargo & Co.*, No. 3:05-CV-42-S, 2008 WL 793683, at *5 (W.D. Ky. Mar. 24, 2008) ("[I]t is well established that the FCRA is not a strict liability statute and the mere reporting of inaccurate information is not enough to create liability." (citation omitted)). On this point, the moving Defendants contend that they did not negligently or willfully access Durbin's credit report without a permissible purpose because they believed that Durbin was seeking financing in connection with the purchase of the Ford Escape from Byerly. (Defs.' Mems. Supp. Mots. Dismiss 9-10). Durbin counters with several reasons why Defendants could not have reasonably believed he was seeking credit from them: (1) the RICS was a completed and executed contract, not an application for credit; (2) the terms of the RICS made clear that Byerly had no interest in the contract; and (3) the RICS was dated more than a month prior to Defendants' request for credit reports. (Pl.'s Resps. Defs.' Mots. Dismiss 13). Moreover, it appears uncontested that Durbin never actually sought financing from the Defendants in question.

This Court dealt with a similar issue in *Wells v. Craig & Landreth Cars, Inc.*, No. 3:10-CV-00376, 2010 WL 4810623 (W.D. Ky. Nov. 19, 2010). In *Wells*, the plaintiff entered into a purchase agreement with a car dealership and specifically informed the dealership that she would

7

seek financing on her own. *Id*. at *1. Even so, the dealership submitted an electronic application for credit with several lenders, including the defendant, Capital One. *Id*. This Court dismissed the FCRA claim because there were no facts to suggest that Capital One should have been suspicious of the car dealership's application for credit on behalf of the plaintiff. *Id*. at *2. The Court concluded that "[a]bsent any allegation that the application Capital One received from [the car dealership] was deficient in some way or that Capital One should have had reason to believe the application was unauthorized, [the plaintiff's] claim under this statute may not proceed." *Id*. The Sixth Circuit affirmed this decision, similarly noting that "[t]here is nothing in [the plaintiff's] amended complaint which might show that Capital One had reason to believe that she did not wish the dealership to file an application on her behalf. Thus, her allegations are insufficient because they do not indicate that Capital One intended to violate her rights under the Act or that it did so recklessly." *Wells v. Craig & Landreth Cars, Inc*., 474 F. App'x 445, 447 (6th Cir. 2012).

*Wells* is similar to the one at hand, but it is also distinguishable in one meaningful way. Both this Court and the Sixth Circuit in *Wells* emphasized that there were *no pleaded facts* to suggest that the lender had reason to believe the requested financing was not authorized. By contrast, Durbin has pleaded facts contending that Defendants should have known that Durbin was not seeking financing and that Byerly was not authorized to seek such financing on his behalf. Most notably, the RICS was a fully integrated contract—not an application for credit. In fact, it appears that Durbin never filled out or signed a credit application. Viewing these allegations in the light most favorable to Durbin, he has articulated a claim that Defendants accessed his credit report without a proper purpose.

In their replies, Defendants highlight Durbin's vague allegations concerning their statutory purpose: "Nowhere in Plaintiff's Amended Complaint does he allege that the RICS was actually

provided by Byerly to [Defendants], or that the RICS was the *only* document or information provided . . . in conjunction with attempting to secure financing for Plaintiff." (Defs.' Replies Mots. Dismiss 4 (emphasis in original)).  As such, Defendants argue that Durbin relies on "mere supposition" when pleading facts relevant to Defendants' mental state when accessing the credit report. (Defs.' Replies Mots. Dismiss 4).  Practically speaking, however, neither Durbin nor any similarly situated plaintiff could know before discovery what documentation led Defendants to conclude they were authorized to pull his credit report. Durbin can only plead what he knows— he never applied for credit from Defendants. As such, Defendants inadvertently highlight the wisdom of *Nayab*, which placed the burden of showing a permissible statutory purpose on the defendant.[7] Defendants here are the ones who would be expected to have the documentation underlying their belief they were authorized to access Durbin's credit report, and they should provide it. Any other outcome would require Durbin to plead a mental state based on facts uniquely within the control of Defendants.

The present case is less clear-cut than the decisions from other jurisdictions relied on by Defendants. In *Hutar v. Capital One Financial Corp*., No. CIV. 15-2100 (MJD/JJK), 2015 WL 4868886 (D. Minn. July 27, 2015), the plaintiff sought financing for a vehicle purchase, but she specifically informed the car dealership that she only wanted two specific financial institutions to

---

[7] As the Ninth Circuit explained, "placing the burden on the plaintiff would be unfair, as it would require the plaintiff to plead a negative fact that would generally be peculiarly within the knowledge of the defendant." *Nayab*, 942 F.3d at 495 (citation omitted). Several recent Sixth Circuit cases have considered the defendant's proffered explanation for why they had a permissible statutory purpose to obtain the plaintiff's credit report. *See Daniel v. Equable Ascent Fin., LLC*, No. 14-2627, 2015 WL 10739402, at *1 (6th Cir. 2015) (affirming dismissal of the FCRA claims and noting that "Daniels did not dispute the defendants' explanation that they obtained her credit report while investigating purchasing her debt."); *Bickley*, 751 F.3d at 730 (affirming summary judgment for the defendant on the FCRA claims when the defendant obtained the information for the legitimate business need of "verifying the identity and qualification of the caller for satellite television service." (internal citation omitted)).

pull her credit report. *Id*. at *1. Even so, the dealership sent her credit application to more lenders than those she identified—lenders who then obtained her credit report. *Id*. Specifically, the car dealership provided "each of the moving defendants with [plaintiff's] DealerTrack Credit Application form, which contains a blank space where the name of a financial institution that had authorization to pull a consumer's credit report could have been, but was not, included." *Id*. at *5. The court concluded that the lenders acted in good faith when pulling plaintiff's credit because they "received a credit application document bearing the plaintiff's signature in connection with an attempt to procure financing for the purchase of an automobile. As a result, each moving defendant obtained her credit report to determine whether it would extend her credit." *Id*. at *6.[8]

There is nothing in the case at hand to suggest that Durbin ever sought financing or otherwise authorized any lender (besides perhaps Transcend) to pull his credit report. Also, there is no indication that Defendants received a credit application signed by Durbin, as in *Hutar*. What this Court is left with, then, is the plausible inference put forward by Durbin that Defendants knew or should have known that he was not seeking financing from them.

In conclusion, Defendants contend that they reasonably believed they had a permissible statutory purpose to access Durbin's credit report. There is nothing in the record, however, to demonstrate how Defendants arrived at that belief, much less facts establishing their legitimate purpose as a matter of law. Defendants suggest this is a failing of the First Amended Complaint, but only they are situated to explain why they chose to access Durbin's credit report. As such, Durbin has stated a plausible claim that Defendants violated the FCRA.

---

[8] Defendants also cite to *Beckstrom v. Direct Merchant's Credit Card Bank*, No. CIV.04-1351 AD/RLE, 2005 WL 1869107 (D. Minn. Aug. 5, 2005), in which a user improperly pulled the plaintiff's credit report based on an incorrectly reported social security number. *Id*. at *3. The court held that "the FCRA is not violated if the entity seeking the credit report made a good faith error in pulling the report." *Id*. (citation omitted).

## B.    <u>Defamation and Preemption</u>

Defendants next contend that Durbin's claims for defamation are preempted by the FCRA. (Defs.' Mems. Supp. Mots. Dismiss 10).[9]   The FCRA contains two provisions that bear on federal preemption: 15 U.S.C. § 1681h(e) and 15 U.S.C. § 1681t(b)(1)(F).  The first preemption provision, Section 1681h(e), provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

The second preemption provision, Section 1681t(b)(1)(F), provides:   "No requirement or prohibition may be imposed under the laws of any state . . . with respect to the subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ."

These preemption provisions have been the source of much debate and have previously been characterized by this Court as "overlapping and potentially contradictory."  *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 784 (W.D. Ky. 2003).  As elaborated in *Stafford*, "[t]he tension between these two provisions therefore results from the fact that § 1681h(e) permits state tort claims, but requires a higher standard of proof for those in the nature of defamation, slander, or

---

[9] Durbin again contends that federal preemption is an affirmative defense, which he does not have to negate in his First Amended Complaint.  (Pl.'s Resps. Defs.' Mots. Dismiss 12-13).  While both propositions are true, as previously noted, courts can consider affirmative defenses at the motion to dismiss stage.  In fact, in *In re Tomlin*, No. 15-20852, 2016 WL 1317412 (Bankr. E.D. Ky. Mar. 31, 2016), which is one of the only cases relied on by Durbin for this argument, the court dismissed several state law claims pursuant to Fed. R. Civ. P. 12(b)(6) on FCRA preemption grounds.  *Id*. at *17-18.

invasion of privacy, while § 1681t(b)(1)(F) prohibits all state claims covered by § 1681s-2." *Id.*
at 785; *see also Eddins v. Cenlar FSB*, 964 F. Supp. 2d 843, 850 (W.D. Ky. 2013) (describing the
three distinct approaches that courts have used to reconcile and apply these preemption
provisions).  This Court in *Stafford* adopted the "temporal approach" to FCRA preemption, which
it summarized in *Eddins* as follows:

> [S]ection 1681t(b), the broader preemption provision, preempts state laws that
> impose obligations on furnishers of information once the furnishers know or have
> reason to know that the information reported is inaccurate; and, therefore, state laws
> imposing obligations on furnishers before they have knowledge of a possible
> inaccuracy are preempted exclusively by § 1681h(e).  Notice of an inaccuracy here
> can come from a credit reporting agency or the consumer himself.

*Eddins*, 964 F. Supp. 2d at 851 (quoting *Brown v. Federated Fin. Corp.*, No. 3:05CV-762-H, 2006
WL 2847013, *2 (W.D. Ky. Sept. 28, 2006)).[10]

Turning to the present case, Durbin's defamation claims against the moving Defendants
are based on the allegations that they "falsely published information to [the consumer reporting
agencies] that Mr. Durbin had initiated a credit transaction with [Defendants]."  (Am. Compl. ¶¶
68, 75, 82).  The First Amended Complaint further alleges that Defendants, at all relevant times,
knew the reported information was inaccurate—"publication of this false information was
deliberate and knowing."  (Am. Compl. ¶¶ 69, 77, 83).  In other words, Durbin's defamation claims
against the moving Defendants is based on allegedly inaccurate information they knowingly

---

[10] This Court further summarized the test under the temporal approach:

> In sum, the temporal approach divides FCRA claims against furnishers into two
> distinct time frames:  1) after the furnisher received notice of the dispute, § 1681t(b)
> preempts state law claims relating to the furnishing of disputed information; and 2)
> before the furnisher received notice of the dispute, § 1681h(e) provides that
> plaintiffs may bring defamation, invasion of privacy or negligence claims, so long
> as plaintiffs can establish the furnisher's malice or willful intent to injure.

*Id.*

furnished to the consumer reporting agency.  As such, it is clear that Durbin's claims are preempted by Section 1681t(b)(1)(F) because they relate to "the responsibilities of persons who furnish information to consumer reporting agencies . . . ."  15 U.S.C. § 1681t(b)(1)(F).  Section 1681s-2 provides, among other things, that furnishers of credit information must do so accurately. Furthermore, applying the temporal approach also results in an application of Section 1681t(b)(1)(F), because Durbin contends that when Defendants furnished the information in question, they knew or should have known it was false.  *See Eddins*, 964 F. Supp. 2d at 851; *Stafford*, 262 F. Supp. 2d at 787 ("[Section] 1681s-2 only implicates conduct occurring after the Bank knew it possessed inaccurate information, or consciously avoided such knowledge.").

This Court and others have reached the same conclusion under similar facts.  *See Lochner v. Merrick Bank*, No. 3:19-CV-00036-GFVT, 2020 WL 1976644, at *3 (E.D. Ky. Apr. 24, 2020) ("Therefore, it is clear from the Complaint that Mr. and Ms. Lochner's state law claims for negligence and defamation are based on the allegedly inaccurate reporting of the furnisher, Green Dot, which is the exact type of conduct regulated under § 1681s-2.  As a result, both of Plaintiffs' claims are preempted . . . ."); *Poynter v. Ocwen Loan Servicing, LLC*, No. 3:13-CV-773-DJH-CHL, 2016 WL 5380926, at *7 (W.D. Ky. Sept. 23, 2016) ("Because each of the three claims springs from [the defendant's] credit reporting, and because each relates to [the defendant's] obligations after it knew or had reason to know of the disputed information, the claims are preempted by the FCRA and cannot survive the motion to dismiss.").

Durbin responds that Section 1681t(b)(1)(F) preemption does not apply because the moving Defendants are "users" of credit reports, not "furnishers of information" for FCRA purposes.  (Pl.'s Resps. Defs.' Mots. Dismiss 17).  As such, Durbin contends that preemption under Section 1681t(b)(1)(F) does not apply because Section 1681s-2 does not regulate or apply to

Defendants.  (Pl.'s Resps. Defs.' Mots. Dismiss 17-18).  In an attempt to sustain this argument, however, Durbin has placed himself on a tightrope.  Section 1681s-2, in short, mandates that those who furnish credit information must do so accurately.  Section 1681t(b)(1)(F), in turn, provides for preemption of state law claims that fall within the ambit of Section 1681s-2.  So, even though Durbin's claims are based on Defendants' alleged furnishing of false information, Durbin now contends this conduct is not governed by Section 1681s-2.  In other words, Durbin is suing for Defendants' *furnishing* of information while simultaneously arguing that Defendants cannot be considered a *furnisher* of information.  That contradiction simply cannot stand.  *See Birdsall v. Peoples Bank of the South*, No. 3:12-CV-480-TAV-CCS, 2014 WL 640704, at *5 (E.D. Tenn. Feb. 19, 2014) ("Plaintiff's state law claims for defamation and negligence are entirely based upon conduct that is regulated under § 1681s-2, that is, Defendant's alleged improper reporting of Plaintiff's credit information.  Because Plaintiff's allegations relate directly to the duties and responsibilities of a furnisher of information to a consumer reporting agency, Plaintiff's state law claims for defamation and negligence are preempted . . . .").

      In conclusion, Durbin is attempting to base a state law defamation claim on conduct that is extensively regulated by the FCRA.  Such claims are expressly preempted by Section 1681t(b)(1)(F).[11]  As such, Durbin's defamation claims against the moving Defendants—Exeter, AmeriCredit, and Capital One—for the alleged furnishing of false information are preempted by the FCRA and are dismissed.

---

[11] Because this Court finds that Durbin's defamation claims are preempted by Section 1681t(b)(1)(F), it need not consider whether they are preempted by Section 1681h(e).  *See Eddins*, 964 F. Supp. 2d at 852 ("[T]he Court must first consider whether [the plaintiff's] claims are preempted by § 1681t(b)(1)(F), with the secondary provision of § 1681h(e) only factoring in the decision if the former does not apply."  (quoting *Morgan v. HSBC Mortg. Servs., Inc.*, 930 F.Supp.2d 833, 839 (E.D. Ky. 2013)).

## V.    <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    Defendants' first five motions to dismiss (DNs 27, 28, 29, 33, 36) are **DENIED AS MOOT**.

2.    Plaintiff's motion to amend (DN 42) is **GRANTED**.

3.    Defendants' final three motions to dismiss (DNs 44, 45, 46) are **DENIED IN PART** and **GRANTED IN PART**.  Plaintiff's Fair Credit Report Act claims are not dismissed, but his defamation claims against Defendants Exeter Finance, LLC, AmeriCredit Financial Services, Inc., and Capital One Auto Finance, Inc. are dismissed.

4.    Defendant's motions to extend time to respond (DNs 59, 60) are **GRANTED**. Defendant Global Lending Services, LLC has 14 days from the entry of this Order to move, plead, or otherwise respond to the First Amended Complaint.

Greg N. Stivers, Chief Judge
United States District Court

June 9, 2020

cc:    counsel of record

15